```
             IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF TEXAS
                      HOUSTON DIVISION

ALINA NUNGESSER,                  §
                                  §
           Plaintiff,             §
                                  §
VS.                               §   CIVIL ACTION NO. H-12-2602
                                  §
LTF CLUB OPERATIONS COMPANY,      §
INC., Individually and d/b/a      §
LIFE TIME FITNESS,                §
                                  §
           Defendant.             §
```

OPINION AND ORDER

Pending before the Court in the above referenced personal injury action, removed from state court and alleging negligence and premises liability against Defendant LTF Club Operations Company ("Life Time"), Inc., individually and d/b/a Life Time Fitness, for its failure to properly instruct Plaintiff in safe use of the Stairmaster SM 916, an exercise machine which was purportedly known by Life Time to be malfunctioning and which caused Plaintiff to fall and break her arm, are Life Time's (1) motion for summary judgment (instrument #12) and (2) traditional motion for summary judgment (#16). In between the filings of the two motions, Plaintiff filed a Second Amended Complaint adding a premises liability claim to the negligence claim asserted in the First Amended Complaint. Therefore the Court addresses both complaints and both motions for summary judgment and related pleadings simultaneously.

**Factual Allegations**

Plaintiff asserts that on or about June 2, 2008, William Nungesser, Plaintiff's husband, signed a membership agreement and purchased a membership with Life Time that permitted Plaintiff to use Life Time's Fort Bend County, Texas premises and exercise equipment.  Plaintiff claims that on or around June 8, 2088, an employee of Life Time gave her a tour and showed her different exercise machines, but failed to explain to her the safe and proper use of the equipment or the safety hazard posed by the "pause" feature on a particular Stair Master SM916, and did not mention or provide her with an available user's manual.  Around January 26, 2010 Plaintiff stepped onto that StairMaster SM 916 and pressed the start button.  Immediately the machine began moving at an extremely fast speed and threw Plaintiff off.  Her attempt to hold onto the rail to stop her fall resulted in a broken arm, diagnosed as a fractured left humerus.  She asserts that all Defendant's employees were negligent while acting within the course and scope of their employment, and therefore Life Time is vicariously liable for their conduct.

Regarding her premises liability cause of action, Plaintiff claims (1) that the StairMaster 916 at issue was unreasonably dangerous because it was defective, was malfunctioning, and was in disrepair, (2) that Life Time, through its authorized agents and employees, had actual knowledge of this hazard before she was

-2-

injured and could have prevented her injury by warning her of the malfunction or removing the machine from service, (3) that its failure to do so was the proximate cause of her injury, and (4) that the hazard posed by the StairMaster was not known nor reasonably apparent to Plaintiff.

**Life Time's Affirmative Defenses, Counterclaim, and Third-Party Complaint (#15)**

Life Time asserts as affirmative defenses (1) contributory negligence, (2) assumption of the risk, (3) release and waiver in the Membership Usage Agreement entered into between Life Time and Plaintiff, (4) Life Time's lack of notice and of knowledge of any defect in the premises or equipment on or prior to the accident, and (5) a third party not under Life Time's control was negligent and was the, or a, proximate cause of Plaintiff's alleged injury.

Life Time counterclaims that Plaintiff signed a contract with Life Time waiving any claim against Life Time for personal injury or property damage arising out of use of its premises and equipment and releasing Life Time from any such claim and that she has now breached the waiver and release provisions of that contract.

Finally, Life Time brings a Third-Party Complaint against William Nungesser ("Nungesser") based on the membership agreement he executed that obliged him to defend and indemnify Life Time against any claims or causes of action brought against Defendant by a member of Nungesser's immediate family.

**Standard of Review**

Summary judgment under Federal Rule of Civil Procedure 56(c) is appropriate when, viewing the evidence in the light most favorable to the nonmovant, the court determines that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  A dispute of material fact is "genuine" if the evidence would allow a reasonable jury to find in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Initially the movant bears the burden of identifying those portions of the pleadings and discovery in the record that it finds demonstrate the absence of a genuine issue of material fact on which movant bears the burden of proof at trial; a "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lujan v. National Wildlife Federation*, 497 U.S. 871, 885 (1990); *Edwards v. Your Credit, Inc.*, 148 F.3d 427, 431 (5th Cir. 1998).

If the movant meets its burden and points out an absence of evidence to prove an essential element of the nonmovant's case on which the nonmovant bears the burden of proof at trial, the nonmovant must then present competent summary judgment evidence to

support the essential elements of its claim and to demonstrate that there is a genuine issue of material fact for trial. *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d 698, 712 (5th Cir. 1994).

Life Time's first motion for summary judgment argues that there is no evidence to support any of the four elements of negligence: that it owed a duty to Plaintiff, that it breached that duty, that Plaintiff suffered damages as a result of the breach; and that those damages were proximately caused by that breach. *Kroger v. Elwood*, 197 S.W. 3d 793, 794 (Tex. 2006). Its second, "traditional" motion is based on the Member Usage Agreement ("MUA") with its assumption of risk, release of liability, and indemnification clauses, purportedly signed by Plaintiff, filed with a copy of an order, *Margaret Quirk v. Life Time Fitness, Inc.*, No. SA-09-998-H, (W.D. Tex. Aug. 9, 2010)(granting summary judgment in favor of Life Time because the Member Usage Agreement satisfied the fair notice requirements under Texas law)(#16, Ex. B). Life Time argues that the negligence claims are barred by Plaintiff's agreement to release Defendant and waive all claims against it for her use of the premises and equipment, that the waive provisions in the MUA meet Texas' fair notice requirements.

### Plaintiffs' Responses (#14, 18, 19)

In response, Plaintiff submits affidavits signed by herself and her husband stating *inter alia* that the day after the accident

when they went to report the injury to Life Time, they spoke to Life Time's general manager, Kevin Siegel ("Siegel"). After they explained what happened, Plaintiff's affidavit states that Siegel told them that the particular StairMaster at issue would "respond in the manner I described if the person who used it before me had it set at a high step rate and then placed the machine on pause," but failed to clear the program if he was finished. #14, Ex. A. Nungesser's affidavit stated basically the same thing, but added that Siegel

> acknowledged knowing that the machine had been malfunctioning in this manner before my wife's injury and said that he would call the manufacturer service technician to come in and check it. After we left, an "out of order" sign was placed on the machine. I saw the out of order sign when I visited the facility on January 28, 2012.

Plaintiff initially asserted that Siegel's hearsay statements evidence that Life Time knew of the risks of that particular machine and were admissible under Federal Rule of Evidence 804(b)(3). Life Time pointed out that for that exception to apply the declarant must be "unavailable" under Federal Rule of Evidence 804(a) and that Siegel was not an "unavailable" witness under the requirements of that rule; therefore the statements were inadmissible evidence. Plaintiff responded that Siegel's admission that the StairMaster was defective and malfunctioning and that he had knowledge of the problem prior to her injury, is admissible and not hearsay under Federal Rule of Evidence 801(d)(2)("The statement

is offered against an opposing party and . . . was made by the party's agent or employee on a matter within the scope of that relationship and while it existed."), i.e., an admission by a party opponent, which does not require unavailability of the declarant. She also points out that Life Time does not deny that Siegel was its general manager when the statements were made or that Siegel was authorized to make them, or that they concerned a matter within the scope of his agency or employment.  The Court agrees.

In her responses, Plaintiff has also submitted another affidavit stating she never saw the membership agreement signed by her husband nor did he inform her of its terms, that she never saw or signed the MUA nor agreed to its terms, that she only signed an electronic signature pad as Life Time's employees told her to do when she "signed in" at the club, and that the pad did not indicate what her signature was for, and that she suggests her electronic signature on the pad may have been transferred onto the MUA.

"In determining whether a genuine dispute exists as to any material fact, the court must consider all of the evidence in the record but refrain from making any credibility determinations or weighing the evidence."  *James v. State Farm Mut. Auto Ins. Co.*, 719 F.3d 447, 466 (5th Cir. 2013), *citing Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).  The court must make all reasonable inferences in favor of the non-moving party. *Id.*

Moreover, a party's affidavit is often self-serving, but the Fifth Circuit does not exclude such an affidavit as incompetent for that reason by itself. *C.R. Pittman Const. Co. v. National Fire Ins. Co. of Hartford*, 453 Fed. Appx. 439, 443 (5th Cir. Oct. 24, 2011)("[A]n affidavit based on personal knowledge and containing factual assertions suffices to create a fact issue even if the affidavit is arguably self-serving."), *citing inter alia Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003)("Provided that the evidence meets the usual requirements for evidence presented on summary judgment--including the requirements that it be based on personal knowledge and that it set forth specific facts showing that there is a genuine issue for trial--a self-serving affidavit is an acceptable method for non-moving party to present evidence of disputed material facts."), and *Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 53 (1st Cir. 2000)("[A] 'party's own affidavit, containing relevant information of which he has first-hand knowledge, may be self-serving, but it is nonetheless competent to support or defeat summary judgment.'").  A party's self-serving and unsupported statement in an affidavit will not defeat summary judgment where the evidence in the record is to the contrary.  Life Time, however, has not submitted any evidence that contradicts Plaintiff's or her husband's affidavits.

Accordingly, because Plaintiff has submitted admissible evidence that raises genuine issues of material fact as to both

negligence and premises liability claims in response to Life Time's motions for summary judgment, the Court

ORDERS that both motions (#12 and 16) are DENIED.

**SIGNED** at Houston, Texas, this  30th  day of  January , 2014.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE